UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>KIRIT PATEL,<br><br>    Defendant. | No. 2:12-cr-00306 JAM<br><br>**ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE** |

This matter comes before the Court on Defendant Kirit Patel's ("Defendant") Motion to Suppress Evidence (Doc. #33). The United States of America (the "Government") opposes the Motion (Doc. #34). On October 15, 2013, the Court held a hearing regarding Defendant's Motion to Suppress Evidence (Doc. #36). For the reasons set forth below, Defendant's motion is DENIED.

    I.    FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

This case arises out of the execution of three search warrants: (1) a warrant to search Defendant's residence on Eastlake Circle in Tracy; (2) a warrant to search Defendant's

1

off-site office on Chabot Drive in Pleasanton; and (3) a warrant to search Defendant's AOL email account. The search of Defendant's residence and an off-site office was conducted pursuant to two warrants issued by a federal magistrate judge based on a similar affidavit of a United States Secret Service Agent (the "Agent"). See Eastlake Aff., Ex. 1, Doc. #33-1. The warrant for Defendant's AOL email account was issued subsequently. See AOL Aff., Ex. 3, Doc. #33-1.

Defendant is charged with wire fraud and mail fraud for allegedly participating in a scheme to defraud. The Agent's supporting affidavit provides that the debt collection scheme involved people in India making calls using "voice over internet protocol" ("VOIP") technology to call victims who had submitted their personal information over the internet to be considered for payday loans. Eastlake Aff. ¶¶ 10-16. The callers falsely claimed to be "law enforcement officials, lawyers, or affiliated with law" and stated that "criminal charges were being brought against [the victims] by a payday loan company for an outstanding loan." Id. ¶ 10-11.

Once the callers received the victims' debit or credit card account information, the cards were processed through several companies set up in the United States. Id. ¶ 14. The Agent stated that Broadway Global Master, Inc. ("BGM") and "In-Arabia Solutions Inc." processed some of the credit card payments based on the information the callers from India collected. Id. He also identified victims whose billing statements reflected charges taken by BGM. Id. ¶ 17-34.

///

Based on his research, the agent stated that the business name, "Broadway Global Master, Inc." and "In-Arabia Solutions Inc." were registered to Defendant. Id. ¶ 35. He also determined that BGM established three separate merchant credit and debit card payment processing accounts with merchant service providers. Id. ¶ 36. From the information provided by these three merchant service providers, the Agent determined that the gross revenue of these accounts between the months of July 2010 and August 2011 totaled approximately $3,876,887.97 and of that total, $416,560.76 were reversed when the consumers complained that they had been defrauded. Id. ¶ 40. One merchant service provider closed BGM's account because of suspected fraudulent activity. Id. ¶ 41.

The Agent also stated that BGM wired over one million dollars to Allianz Infonet, the VOIP company being used to contact the victims of the payday loan scheme. Id. ¶¶ 47-50. Specifically, as to Defendant's residence, he stated that the address was listed as the business address for BGM on various documents. Id. ¶¶ 51-53. In addition, bank statements and wire transfer statements for one of BGM's bank accounts were sent to this address. Id. ¶ 42. As to the off-site office, he stated that the address was also listed as the business address for BGM on various documents. Id. ¶¶ 54-55.

During the execution of the warrant at Defendant's residence, the agents found a printed email from the AOL account kirit8@aol.com. AOL Aff. ¶ 2. The Agent applied for a search warrant authorizing the search of information related to the AOL email account. Id.

II.  OPINION

A.  Legal Standard

For a search warrant to be valid, it "must be supported by an affidavit establishing probable cause." United States v. Stanert, 762 F.2d 775, 778 amended, 769 F.2d 1410 (9th Cir. 1985).  Probable cause exists when, under the totality of the circumstances, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983).  Review of a magistrate judge's determination that probable cause existed for a warrant is deferential; "the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed." Gates, 462 U.S. at 238-39.  The district court is "limited to the information and circumstances contained within the four corners of the underlying affidavit." Stanert, 762 F.2d at 778.

B.  Discussion

1.  Probable Cause for the First Two Warrants

Defendant challenges the issuance of the warrants for lacking probable cause.  Specifically, Defendant contends that the warrants lack probable cause because the supporting affidavit did not provide facts linking Defendant's residence and off-site office to the debt collection scheme.  The Government disagrees, arguing that the affidavit established a nexus to both premises.

For probable cause to search a location, the supporting affidavit "must establish a reasonable nexus between the crime or evidence and the location to be searched." United States v.

4

Crews, 502 F.3d 1130, 1136-37 (9th Cir. 2007) (citing United States v. Chavez-Miranda, 306 F.3d 973, 978 (9th Cir. 2002)). "It need only be reasonable to seek the evidence at the location indicated in the affidavit." Id. (citing United States v. Pitts, 6 F.3d 1366, 1369 (9th Cir. 1993)). The Ninth Circuit has also held that "[i]t is well-established that a location can be searched for evidence of a crime even if there is no probable cause to arrest the person at the location." United States v. Hay, 231 F.3d 630, 635 (9th Cir. 2000).

In support of his motion, Defendant relies on United States v. Vigeant, 176 F.3d 565 (1st Cir. 1999). In Vingeat, the First Circuit held that the affidavit failed to establish probable cause to search the defendant's home for evidence of money laundering. Id. at 569. The court assumed "that there was probable cause that the evidence (in the form of bank records) of such a crime would be found at [the defendant's home]." Id. Nonetheless, the Court held that probable cause was lacking because (1) there was no link between the alleged drug dealing and the bank activity that took place six months later; (2) the banking and investment activity was not itself of a character sufficient to establish that the "proceeds of some form of unlawful activity," were involved; and (3) the conclusory statements of the affiant were without factual support. Id.

Vingeat, however, is distinguishable. In the instant case, from the investigation, BGM was reasonably suspected of being involved in the fraudulent scheme because it processed credit cards payments from known victims, transferred money to Allianz, Inc., and one merchant service provider closed BGM's account

5

because it was suspected of fraud. BMG was linked to Defendant's residence and off-site office because these addresses were listed as BGM's business address and at least one bank sent regular statements to the home address. The Agent also stated that based on his training and experience in investigating financial fraud, he believed evidence of the debt collection scheme would be available at these two locations because "individuals generally maintain records of their financial activity, such as receipts for expenditures by cash, check and/or online payments, bank records, loan documents, tax returns, correspondence, and other financial documents, in their personal residences, vehicles, storage units, and on their electronic devices." Eastlake Aff. ¶ 60. Also, based on his experience and because BGM had an associated email address, info@bgminc.us, he believed that records would be digitally stored. Id. ¶¶ 61-62. Therefore, unlike in Vigeant, in this case, there is a link between the records and the alleged wire fraud and money laundering, the records could constitute evidence that BGM was involved in the scheme, and the Agent's statement regarding where evidence could be found was reasonable.

Defendant argues that the Agent's mere assertion of probable cause based on his or her "training and experience," and unadorned by sufficient supporting facts, is inadequate to establish probable cause. Mot. at 7 (citing United States v. Cervantes, 24 703 F.3d 1135, 1139-40 (9th Cir. 2012) (holding that conclusory statements are insufficient to establish probable cause). However, the only statements the Agent made based on his

6

training and experience related to where evidence of the debt collection scheme might be located; statements on which the magistrate judge could reasonably rely. United States v. Bryan, 19 F.3d 30 (9th Cir. 1994) ([T]he magistrate judge may 'rely on the conclusions of experienced law enforcement officers regarding where evidence of a crime is likely to be found.'")(quoting United States v. Fannin, 817 F.2d 1379, 1382 (9th Cir. 1987)). In addition, the magistrate judge could "reasonably conclude" that business records would be kept at the listed business addresses.

Defendant also argues that listing BGM's business address as his home address and off-site office address in various records is insufficient to establish the probable cause nexus requirement absent additional corroborative facts. Reply at 6. Defendant cites several cases in support. However, of these cases, only United States v. Tozer, 08-20177, 2009 WL 3698549 (E.D. Mich. Nov. 5, 2009), involves a warrant to search for business records at the business location while all the other cases cited involve a residence not listed as a business address. In Tozer, the court found that there was no probable cause to search the business location because the affiant indicated that the defendant removed his business records from the business property and there was no evidence that the business records were returned to the location. Id. at *4. However, here, there was no reason to believe that the business records were removed from the two business addresses.

Accordingly, the Court finds that the magistrate judge was presented with enough evidence in the affidavit to conclude that

there was a nexus between the crime or evidence and the locations to be searched.

### 2. Probable Cause for AOL Warrant

Defendant also challenges the search and seizure of his AOL email account because (1) the basis for probable cause was derived from the Agent's prior affidavit, which lacks probable cause; (2) the AOL email correspondence and written instructions seized were outside of the scope of the warrants being executed; and (3) there was insufficient probable cause to connect it to the alleged fraudulent scheme. See Reply at 11.

First, because the Court has found that the warrants for Defendant's residence and off-site office were based on probable cause as discussed above, the printed AOL email correspondence was not evidence found to be derivative of an illegality or "fruit of the poisonous tree." Segura v. United States, 468 U.S. 796, 804 (1984).

Second, the warrants authorized the seizure of "records establishing ownership or control of business entities named Broadway Global Master, Inc., BGM, or In-Arabia Solutions, Inc., or variations on those names," (Att. B to Eastlake Aff., ¶ 2), and "[a]ny and all financial records in whatever form, including but not limited to bank account statements, deposit slips, withdrawal slips, checks, money order receipts, records concerning prepaid debit cards, checkbook registers, and evidence of wire transfers or online account transfers" (Id. ¶ 7). Here, the email correspondence seized referred to BGM and was evidence of wire transfers, including wiring funds to India. AOL Email Correspondence, Ex. A to Government's Opp., Doc. #34-1, at 3.

Defendant argues that the AOL email correspondence could not be
seized under these sections because the warrants were particular
and specific in scope and only authorized the seizure of "[a]ll
records, including e-mail messages, from or concerning the e-mail
addresses: info@bgminc.us, federalcrimedepartment@hotmail.com,
and any other e-mail addresses for any merchant service provider,
any payment gateway, any Voice-over-Internet Protocol service
provider or any bank." Att. B to Eastlake Aff. ¶ 12. Because the
AOL email account was not listed, Defendant argues that the
seizure of the AOL email correspondence was not authorized.
Reply at 13. Defendant relies on Andresen v. Maryland, 427 U.S.
463, 480 (1976), which provides that the particularity
requirement "makes general searches . . . impossible and prevents
the seizure of one thing under a warrant describing another. As
to what is to be taken, nothing is left to the discretion of the
officer executing the warrant." Id. (quoting Stanford v. State
of Tex., 379 U.S. 476, 485 (1965)). However, here, the email
correspondence was properly seized as evidence of wire transfers
because the warrant provides that relevant financial records "in
whatever form" will be seized. Defendant also argues that once
the agents saw the printed documents with the AOL email address
on it, they should have secured a separate warrant to read them.
However, the printed email was found with other business records
and therefore, it was appropriate for the agents executing the
warrant to read the email in order to determine whether it was,
in fact, among those papers authorized to be seized. Therefore,
the AOL email correspondence was within the scope of the
warrants.

1    Third, Defendant argues that there was insufficient evidence
2    to connect the AOL email account to the alleged fraudulent
3    scheme.  In the supporting affidavit for the AOL email account,
4    the Agent states that agents found a printed email from the AOL
5    account that "appears to discuss the commission that PATEL would
6    receive as his portion of the proceeds of Broadway Global
7    Master's activities in support of the scheme to defraud.  The
8    e-mail address KIRIT8@AOL.COM was not known to be associated with
9    PATEL prior to execution of this warrant."  AOL Aff. at ¶ 45.
10   The agent also stated:

> Among the records recovered during that search warrant were written instructions from PATEL to the employees of that office location instructing them to open and scan correspondence addressed to Broadway Global Master, and to e-mail the scanned correspondence to KIRIT8@AOL.COM. Among the documentation that PATEL instructed the office staff to e-mail to KIRIT8@AOL.COM was correspondence from the Better Business Bureau and a letter from victim C.L., who had been corresponding with PATEL throughout 2011. The most recent correspondence between PATEL (using the KIRIT8@AOL.COM address) and the office staff was on April 3, 2012.

18   Id. ¶ 46.  Therefore, there was sufficient evidence to show that
19   Defendant was conducting some of BGM's affairs through the AOL
20   email account.  Because BGM was reasonably suspected of money
21   laundering and wire fraud as mentioned above and the AOL email
22   account was being used to conduct BGM affairs, there was more
23   than a fair probability that evidence of the debt collection
24   scheme would be found in the AOL email account.
25        Accordingly, under a totality of the circumstances, the
26   affidavit established probable cause to search the AOL email
27   account.
28             3.   Scope of Warrants

1    Defendant argues that the search warrants were overbroad and
2 unreasonably exceeded the scope of any showing of underlying
3 probable cause.  The Government argues that the warrants were
4 sufficiently particular because they contained a limited list of
5 items that could be seized.
6    The Ninth Circuit has "held that where a business is
7 searched for records, specificity is required to ensure that only
8 the records which evidence crime will be seized and other papers
9 will remain private." United States v. Washington, 797 F.2d
10 1461, 1472 (9th Cir. 1986)(citation omitted).  "Thus, if items
11 that are illegal or fraudulent are sought, the warrant must
12 contain some guidelines to aid the officers in deciding what may
13 or may not be seized."  Id.  Similarly, for electronic searches
14 when probable cause exists, "all items in a set of files may be
15 inspected during a search, provided that sufficiently specific
16 guidelines for identifying the documents sought are provided in
17 the search warrant and are followed by the officers conducting
18 the search." United States v. Tamura, 694 F.2d 591 (9th Cir.
19 1982); see also United States v. Comprehensive Drug Testing, 621
20 F.3d 1162, 1177 (9th Cir. 2010) (en banc) (per curiam) ("we have
21 updated Tamura to apply to the daunting realities of electronic
22 searches").  In addition, "[i]f the need for transporting the
23 documents is known to the officers prior to the search, they may
24 apply for specific authorization for large-scale removal of
25 material, which should be granted by the magistrate issuing the
26 warrant only where on-site sorting is infeasible and no other
27 practical alternative exists."  Id.
28    Citing United States v. Hunter, 13 F. Supp. 2d 574, 584 (D.

Vt. 1998), Defendant argues that the warrants to search his residence and off-site office were overbroad because they authorized the agents to seize all computers and all electronic files contained in them. Mot. at 17. In Hunter, the court held that the provision that authorized seizure of all computers, computer storage devices, and computer software systems was not sufficiently particularized because it did not indicate specific crimes for which equipment was sought or incorporate by reference supporting affidavits or limits contained in searching instructions. 13 F. Supp. 2d at 584. In this case, the warrants included a search procedure for the contents of the computers found on the premises, which only permitted off-site imaging of the computers if it was impractical to conduct an on-site search and on-site imaging. Eastlake Aff. ¶¶ 63-65. Further, the seizure of computers and electronic devices was limited to those "used to facilitate the above listed violations," which refers to the money laundering and wire fraud violations mentioned in the introductory paragraph of the attachment. Att. B to Eastlake Aff. Therefore, unlike in Hunter, the warrants were sufficiently particular even though the affidavit underlying the warrants sought permission to search numerous types of computer-related equipment and various storage media because they contained a search procedure and indicated the specific crimes for which the equipment was sought.

In addition, Defendant argues that the Agent unlawfully requested broad authority to search and seize Defendant's entire AOL email account. Mot. at 16; Reply at 14. The AOL warrant required AOL to turn over all of Defendant's AOL account, but the

warrant specified that the information to be seized by the government would be limited to information regarding the users of the account and four categories of evidence: (a) "Collection of debts or communicating with people under the guise of collecting debts; (b) "[t]he creation, funding, or control of business entities operating under the name Broadway Global Master or In-Arabia Solutions;" (c) "[f]inancial transactions involving the proceeds of debt collection or fraudulent schemes purporting to involve debt collection;" (d) "[c]omplaints about debt collection activity or fraudulent debt collection activity and responses to those complaints." Att. B to AOL Aff. at Section II. Therefore, even though the warrant authorized the Government to search the entire content of Defendant's AOL email account, the Government was only permitted to seize items related to the specific categories enumerated in the warrant related to the alleged offenses.

Defendant also argues that "the government has not followed the Comprehensive Drug Testing protocol to identify and segregate data with the scope of the warrant." Reply at 15. However, the protocols to which Defendant refers do not appear in the majority opinion of Comprehensive Drug Testing, but in the concurrence, and therefore are not required in order to satisfy the particularity requirement. See Comprehensive Drug Testing, 621 F.3d at 1179 (Kozinski, C.J., concurring); United States v. Schesso, 11-30311, 2013 WL 5227071, at *7 (9th Cir. Sept. 18, 2013) (noting that "[b]y its own terms, the concurring opinion proposes the protocols not as constitutional requirements but as 'guidance,' which, when followed 'offers the government a safe

13

harbor'").

Accordingly, the Court finds that the warrants for Defendant's residence, off-site office, and AOL email account are sufficiently particular.

### 4. Good Faith Exception

Even if the warrants lacked probable cause, the Leon good faith exception would apply in this case. See United States v. Leon, 468 U.S. 897, 923 (1984). Under this exception, the exclusionary rule does not bar "the government's introduction of evidence obtained by officers acting in objectively reasonable reliance on a search warrant that is subsequently invalidated." United States v. Luong, 470 F.3d 898, 902 (9th Cir. 2006) (citing Leon, 468 U.S. at 918-21). The "good faith test is an objective one," and the Court must ask "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." Id. (quoting Leon, 468 U.S. at 922 n. 23). In Leon, the Supreme Court identified four situations in which the good faith exception cannot apply:

> (1) when the affiant knowingly or recklessly misleads the judge with false information; (2) when the judge wholly abandons his or her neutral role; (3) when the affidavit is so lacking in indicia of probable cause that official belief in its existence is objectively unreasonable; and (4) when the warrant is so facially deficient that executing officers cannot reasonably presume it to be valid (i.e., it fails to specify the place to be searched or the things to be seized)

Id., 470 F.3d at 902 (citing Leon, 468 U.S. at 914, 923). The third situation is the one at issue in this case. When conducting the inquiry, the Court should consider "whether the affidavit is 'sufficient to create disagreement among thoughtful and competent judges as to the existence of probable cause.'"

Id. (quoting Leon, 468 U.S. at 926).

As mentioned above, all three warrants were supported by affidavits that described an ongoing investigation into a fraudulent scheme and BGM's alleged role in the scheme. In addition, Defendant's residence and off-site office are listed as BGM's business address. Therefore, there is a colorable argument enough to show good faith that the search of Defendant's residence and off-site office was supported by probable cause. Moreover, because Defendant used the AOL email account to conduct BGM affairs, the affidavit presented facts over which thoughtful and competent judges could disagree and, therefore, presents a colorable basis that probable cause existed.

Accordingly, the Court finds that the agents relied on the warrants in objective good faith.

### III. ORDER

For the reasons set forth above, the Court denies Defendant's Motion to Suppress.

IT IS SO ORDERED.

Dated: October 28, 2013

JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE